**John E. Kavanagh, Appellant, v. Bank of America et al., Appellees.**

### Gen. No. 14,014.

1. NEGOTIABLE INSTRUMENTS—*effect of indorsement of certificate of deposit.* An indorsement by the payee of a certificate of deposit makes it in effect payable to the bearer so that title thereto passes by mere delivery.

2. NEGOTIABLE INSTRUMENTS—*status of certificates of deposit.* By statute of Illinois as well as by the common law, certificates of deposit are negotiable instruments.

3. NEGOTIABLE INSTRUMENTS—*when bona fide purchaser for value of certificate of deposit not subject to equitable defenses.* A *bona fide* purchaser for value of certificates of deposit the execution of which has been procured without fraud or deception, is not subject to equitable defenses involving the insufficiency of consideration, or the like, existing as between the maker and the original payee.

4. RECEIVERSHIPS—*form of order directing payment of claim.* An order directing a receiver to pay a claim allowed against an estate should not direct payment "forthwith" but should provide that such payment be made "in due course of administration".

Bill for receiver, etc. Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed December 7, 1908.

EDWARD J. STEVENS, for appellant; DAVID K. TONE and EDGAR L. MASTERS, of counsel.

ADAMS & FROEHLICH, for appellee, Gilbert C. Pryor.

MR. JUSTICE HOLDOM delivered the opinion of the court.

The appellant, John E. Kavanagh, filed a bill to wind up the affairs of the appellee Bank of America and for the appointment of a receiver as a means to accomplish that end. Daniel D. Healy was appointed such receiver. In the process of the administration of the bank, the marshalling of its assets and in ascertaining its liabilities, one Gilbert C. Pryor in an intervening petition presented a claim as assignee of six certificates of deposit of the Bank of America, each for the sum of $2,500. On June 10, 1907, after a hearing before the chancellor, the claim was allowed for $15,903.42, the amount of principal and interest due on the six certificates of deposit, and a decree entered to that purport and directing "that said receiver be and he is hereby ordered, adjudged and decreed to pay to said Gilbert C. Pryor the said sum of fifteen thousand nine hundred and three dollars and forty-

two cents ($15,903.42) forthwith". From this finding
and decree John E. Kavanagh prayed, was allowed and
perfected an appeal to this court. Daniel D. Healy,
the receiver, also prayed and perfected an appeal to
this court, but has since caused his appeal to be dis-
missed.

The material findings of the decree are as follows:

"That the said Gilbert C. Pryor is the holder and
owner of six certificates of deposit, each dated the 15th
day of January, 1906, for twenty-five hundred dollars
* * * respectively, due respectively, two in five, two
in six and two in seven months after date, all of said
certificates being payable to the order of F. E. Creel-
man and by the said F. E. Creelman endorsed in blank;
that the said F. E. Creelman sold the said certificates
of deposit to the Jackson Trust & Savings Bank and
the Jackson Trust & Savings Bank received such cer-
tificates in the regular course of business for a val-
uable consideration, namely, the sum of fifteen thou-
sand dollars * * * in money paid by the said
Jackson Trust & Savings Bank to said F. E. Creel-
man; that said Jackson Trust & Savings Bank re-
ceived all of said certificates before the maturity of
any of them, and was ignorant of the defenses, if any,
which said Bank of America might have or have had
against the enforcement of liability on said certificates
in the hands of said F. E. Creelman.

"And the Court further finds that said Jackson Trust
& Savings Bank transferred the said certificates to the
said petitioner, Gilbert C. Pryor, and received therefor
the sum of fifteen thousand dollars * * * before
the maturity thereof, and the said Gilbert C. Pryor
received said certificates in the regular and ordinary
course of business and was ignorant of any defense
which the said Bank of America might have against the
payment thereof.

"And the Court further finds that the said certifi-
cates are a good and valid claim against the estate of
said Bank of America now in the hands of the receiver,
Daniel D. Healy, and that the amount now due on said
certificates is the sum of fifteen thousand nine hundred
and three dollars and forty-two cents, * * * which

should be allowed as a claim against the assets in the hands of the receiver of the said Bank of America. * * * ''

We have examined with care all of the testimony appearing in the record, and without here again reciting such testimony, content ourselves by declaring it as our opinion that the findings of fact above recited are abundantly sustained by the proofs in the record.

The certificates in dispute are in the following form:

"Bank of America          No. 20          $2500.

CHICAGO, JAN. 15, 1906.

F. E. Creelman has deposited in this Bank twenty five hundred dollars, payable in current funds five months from date, with interest at the rate of 3% per cent per annum on return of this certificate properly endorsed.

C. A. SAWTELLE,          .          R. H. HOWE,
        Teller.                            Cashier.

No. 3224.''

Endorsed: "F. E. CREELMAN."

The other five certificates are exactly the same, with the exception of their numbers and time of payment of four of them.

Counsel for intervenor stated upon the trial that they would agree that any defense that could be made against the bank—meaning the Jackson Trust & Savings Bank—could be used against Pryor.

In view of this concession we will now determine the rights of the Jackson Trust & Savings Bank as affecting the character of the title which they transmitted to the intervenor claimant, Pryor.

While, as we have already said, the proof sustains the findings of fact in the decree, neverthelesss the right of recovery depends upon the application of principles of law governing and controlling such facts.

The burden of the argument of appellant is devoted to two propositions:

First.  That the Bank which acquired the certificates of deposit from Creelman is not an innocent assignee of such certificates in the usual course of busi-

ness, and that Pryor is not the holder by assignment from the bank. These contentions involve an attack upon the probative force of the facts.

Second. That "where fraud in the inception and issuance of negotiable paper is shown by the maker, the burden is on the indorser to prove himself to be an innocent holder". This raises the questions of law in the case and leaves for our decision whether the last quoted statement announces a legal proposition which, upon the facts in the record, inhibit a recovery.

First. The evidence, uncontradicted, of Lawton, the cashier of the Jackson Bank, called by appellant and made his own witness, thereby vouching for his credibility, was that he did not know how the certificates were obtained by Creelman from the Bank of America; that these certificates were purchased and received by the Jackson Bank in the regular course of business. Lawton was the cashier of the bank and as such received the certificates from Creelman. Creelman, it is true, had many other dealings with the Jackson Bank, and at the time of negotiating the certificates in suit was an officer and stockholder of the Bank of America, whose fidelity in his dealings with that bank is challenged in the bill filed for a receiver. That many irregularities were practiced by the president and other officers of the bank, to its detriment and ruin, are matters of judicial history. No knowledge that any fraud was practiced in the procuring of these six certificates from the Bank of America by Creelman or any one else, is fastened upon the Jackson Bank or its officers by the proof in the record; nor is any such knowledge reasonably inferable from any proof therein.

In the light of the stipulation orally made at the conclusion of the evidence for the defense by counsel for intervenor, and impliedly, for want of objection or challenge upon the part of any one defending, acquiesced in by appellant, we think it is immaterial whether evidence is in this record sustaining title of

Pryor in the certificates as assignee of the Jackson Bank. Mr. Adams, speaking for the intervenor, at the close of the defense said: "It is stipulated that the case shall proceed the same as if the Jackson Trust & Savings Bank were the real plaintiffs here in the place of Pryor, trustee, and that no point will be raised by reason of the fact that Pryor, trustee, failed to show that he paid any actual consideration for those certificates to the Jackson Trust & Savings Bank". This stipulation was, in its effect, a concession to appellant and favorable to the defense, as it eliminated the question of the protection which the law extends to remote assignees for value of such banking paper acquired before maturity and without knowledge, actual or imputable, of irregularities in their issue or fraud in obtaining them. This requirement was waived, and appellant is now estopped to make the objection on appeal which he impliedly, at least, waived on the trial. Aside, however, from these considerations, we find evidence in the record, uncontradicted, that Pryor actually paid the Jackson Bank $15,000 and accrued interest for the certificates at the time they were delivered to him, before their maturity. Such delivery by the Jackson Bank without further endorsement was sufficient to vest the title to them in Pryor. The indorsement by Creelman of these certificates made them, in legal effect, payable to bearer, so that the title to them would pass by delivery to a third party, and no further indorsement was needed to pass the title. Authorities sustaining this proposition will be found in the Encyclopaedia of Law & Procedure, vol. 7, p. 759, and cases there cited.

Second. It is contended that the certificates of deposit are not negotiable instruments within the meaning of the statutes of this state on that subject, and not being negotiable the Bank of America may avail of all defenses, legal and equitable, which it might make were such certificates in the hands of the original owner. It is further urged that these certificates are

not negotiable under the Negotiable Instrument Act. Chapter 98, R. S. and Sections 3 and 4, are cited in support of such claim.

Section 3 provides that "All promissory notes, bonds, due-bills and other instruments in writing made or to be made by any person  *  *  *  whereby such person promises or agrees to pay any sum of money  *  *  *  or acknowledges any sum of money  *  *  *  to be due to any other person, shall be taken to be due and payable, the sum of money  *  *  * therein mentioned by virtue thereof to be due and payable as therein expressed".

The certificates in question contain the quality and *indicia* of instruments in writing made by the Bank of America—an artificial person promising to pay a sum certain to a person named, at a definite time, with interest at a specified rate on surrender of the certificates properly indorsed. The statute is not confined in its operation to promissory notes, bills of exchange or due-bills, but includes instruments in writing of the nature of these certificates. To obtain payment when due, the certificates must be surrendered duly indorsed. The indorsement means that of the person named in the certificate. When so indorsed and offered for surrender, the amount due is payable to the person presenting the same for surrender and payment. The certificates when indorsed in blank are, by operation of law, payable to bearer.

Section 4 *supra* provides that "any such note, bond, bill or other instrument in writing, payable to any person named as payee therein, shall be assignable by indorsement thereon under the hand of such person.  *  *  *" Applying this section to the certificates, the person named therein, F. E. Creelman, is the payee, and they were assignable by his indorsement under his hand. The certificates are therefore negotiable instruments and were assignable by the indorsement of Creelman and payable to the person to whom they were delivered upon surrender. Furthermore, it was

decided in Telford v. Patton, 144 Ill. 611, that a certificate of deposit is in fact and law a promissory note for the payment of money. Beckstrom v. Krone, 125 Ill. App. 376.

We think that in every material particular the certificates of deposit have all the essential qualities of a promissory note as defined in Dorsey v. Wolff, 142 Ill. 589, where the court say: "Various definitions have been given of a promissory note. In general terms, it may be defined to be a written promise by one person to pay another person therein named, or order, a fixed sum of money at all events and at a time specified therein, or at a time which certainly must arrive".

Certificates of deposit of the character of those in the record pertain to the business of banking, and are issued, generally, in the usual course of the business of bankers. They are as well recognized and understood in the business world of today as a legitimate method and means of banking, as the dealing of bankers in domestic and foreign bills of exchange, due bills and other negotiable paper, have been for centuries recognized and understood as the major part of the active business of bankers and banking. These certificates were issued by the accredited officers of the Bank of America to Creelman in the usual course of the business of the bank. They passed current among bankers as assignable, negotiable paper. As we have hereinbefore demonstrated, they are negotiable instruments, the title to which passes by indorsement and delivery. But it is insisted that there are equitable defenses to the certificates between the maker and Creelman, and that those defenses can be successfully interposed against the intervenor and the assignee, the Jackson Bank. These defenses go, in the main, to the adequacy of the consideration moving from Creelman to the bank, involving also the integrity of the Bank of America's executive officers. Whatever the facts regarding such contentions may be, the record fails to connect either the officers of the Jackson Bank or

Pryor with knowledge, in the slightest degree, of any illegal conduct or fraud or conspiracy between the bank's officers and Creelman in the obtaining of the certificates. The whole argument rests for its support in surmise and conjecture, upon the apparent assumption that Creelman, in his dealings with the Jackson Bank, had developed such a character as an unsound and unsafe financier that his possession of the certificates was sufficient to raise a presumption that he obtained them irregularly and that they were not issued to him by the Bank of America in the regular course of its business. With proof that the certificates were acquired by the Jackson Bank from Creelman for full value paid by the bank to Creelman, that for such consideration they were indorsed and delivered by Creelman to the Jackson Bank before maturity, and that they were subsequently delivered by the bank, without further indorsement, to Pryor, the latter made a *prima facie* case against the receiver for an allowance of the amount of the principal and interest due upon them.

The evidence given in defense failed to fasten upon either the Jackson Bank or Pryor knowledge of any fraud or irregularity in their issue, or that they were in fact issued without consideration. The fact, if it be a fact, that the consideration for the issue of the certificates was inadequate, or that the officers of the Bank of America issued them without due regard to their duty as officers of the bank, or in disregard of such duty, did not impute knowledge to the Jackson Bank or Pryor of these derelictions upon the part of the bank's officers, making it necessary for Pryor to put in any rebutting proof. There is no pretense that any fraud or deception was practiced by Creelman in procuring the execution and delivery of the six certificates to him by the Bank of America, nor is there any evidence that they were not issued in the usual course of the business of the Bank of America. Fraud or deception necessary to invalidate the certificates, must

have been practiced in the obtaining of them in the first instance. Inadequacy of consideration will not invalidate them in the hands of an innocent holder for value before maturity. Martina v. Muhlke, 186 Ill. 330; Richelieu Hotel Co. v. Mil. Enc. Co., 140 *ibid.* 257; Bradwell v. Pryor, 221 *ibid.* 606; Connolly, Admr., v. Dammann, 232 *ibid,* 175.

Lawton, the cashier, was the officer of the bank who bought the certificates from Creelman for the Jackson Bank, and we see nothing in this record needing any contradiction by Eagan, the president of the Jackson Bank, or justifying any inference that Eagan had any knowledge of any frauds by the bank officers in issuing the certificates or on the part of Creelman in obtaining them.

There is nothing in the reported conversation between Daoust of the Defiance Bank and Eagan which tends to charge Eagan with knowledge of any irregularities or frauds in the issuing of the certificates to Creelman, imposing upon Eagan the necessity of testifying in contradiction. Nothing in this record tends to prove a common design on the part of Creelman and the officers of the Bank of America and any officers of the Jackson Bank of conspiring to defraud the Bank of America in procuring the issuance of the six certificates of deposit in dispute. Nor do any of the cases cited by appellant hold to any such doctrine on facts anywhere near similar to those in the case at bar.

The objection is made that the direction in the decree to the receiver, to pay the amount found due on the certificates "forthwith" is contrary to the usual course and practice in cases of claims ordered paid by receivers in liquidation proceedings, and that the order should have been that the amount found due should be paid by the receiver in the due course of the administration of the bank's estate. The costs of liquidation, including receiver's charges, are primarily payable from the assets of a concern in liquidation

before the receiver pays other claims. We think this objection is well taken, but it does not necessarily require a reversal of the chancellor's decree.

The decree of the Superior Court will be modified by striking out of it the last word thereof, viz, "forthwith", and inserting in its place the words, "in due course of the administration of the estate of said Bank of America in liquidation in this court".

And as so modified the decree of the Superior Court is affirmed.

*Affirmed.*